**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRENDAN WILLAUER et al.**<br>*Plaintiffs*<br><br>v.<br><br>**CHESTER COUNTY INTERMEDIATE UNIT et al.**<br>*Defendants* | **Civil No. 23-3759** |

**<u>MEMORANDUM</u>**

**Costello, J.**                                                    **August 14, 2025**

Plaintiff Brendan Willauer, a student with significant disabilities, was severely burned when an instructor in his automative vocational program gave him an electric grinder to use unsupervised. Willauer and his parents, Plaintiffs Sandra and Christopher Willauer, have brought nine statutory and tort claims against Defendants Chester County Intermediate Unit, Pequea Valley School District, and Hal Vita. Defendants have moved to dismiss most of these claims. For the reasons that follow, the Court will grant Defendants' motions in part and deny them in part.

## I.    BACKGROUND[1]

At the time he was injured in January 2022, Willauer was a twenty-year-old student with significant disabilities. *See* ECF No. 1 ¶¶ 87, 67-92. Willauer's diagnoses included Autism, Intellectual Disability, and ADHD. *See id.* ¶¶ 3, 64-65. Willauer had "profound executive functioning and attentional deficits and read[] at only a kindergarten level." *Id.* ¶¶ 4, 66.

---

[1] The Court accepts Plaintiffs' factual allegations as true for the purposes of resolving this motion to dismiss. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Because of his disabilities, Willauer required "constant, intensive, individual attention and instruction to function within any classroom or vocational setting." *Id.* ¶¶ 4, 67-92.

Willauer lived with his parents, Sandra and Christopher Willauer, within Pequea Valley School District ("School District") and attended school there before his parents transferred him to Agora Cyber Charter School, where he received "virtual academic instruction" during the 2020-21 school year. *See id.* ¶¶ 12, 15-16, 93. Agora Cyber Charter School developed an Individual Education Plan ("IEP")[2] for Willauer on April 7, 2021. *Id.* ¶ 94. In Summer 2021, Willauer's family transferred him back to the School District so that he could attend a vocational program for his twelfth-grade year. *Id.* ¶¶ 11, 96. The School District then enrolled Willauer in the Chester County Intermediate Unit ("Intermediate Unit")'s automotive vocational program for the 2021-22 school year. *Id.* ¶¶ 6, 17, 97-98.

Despite transferring Willauer from an online school to an in-person automotive vocational program that involved instruction with "dangerous tools and applications," neither the School District nor the Intermediate Unit revised Willauer's April 7, 2021 IEP aside from a few handwritten modifications. *Id.* ¶¶ 98-99.[3] As Willauer began his program with the Intermediate Unit, the Intermediate Unit reported between November 5, 2021 and January 20, 2022 "that Brendan earned very low scores in its program for competency, following directions, and complying with safety rules" and "documented his need for constant supervision, prompting, and

---

[2] IEPs "spell[] out a personalized plan to meet" a child with a disability's "educational needs." *See Fry v. Napolean Cmty. Schs.*, 580 U.S. 154, 158 (2017) (quoting 20 U.S.C. § 1414(d)(1)(A)(i)(II)(bb)).

[3] The only handwritten modifications included: (1) changing "location of services to [the Intermediate Unit] as of September 17, 2021:" (2) adding "job coaching for unspecified minutes per week;" (3) adding "vocational specialist services for only 1.5 hours per month;" and (4) adding "group job training" for "210 minutes per month." ECF No. 1 ¶ 99.

individualized attention." *Id.* ¶¶ 100-01.  Still, neither the School District nor the Intermediate Unit revised Willauer's IEP.  *See id.* ¶¶ 98-99.

On January 27, 2022, Willauer was working in the Intermediate Unit's auto shop.  *See id.* ¶¶ 6, 104.  Defendant Hal Vita directed the Intermediate Unit's staff to give Willauer a hand-held electric grinder to file down metal.  *See id.* ¶¶ 6, 104, 108.  The Intermediate Unit's staff then closed an "opaque curtain" around Willauer and "directed him to use the grinder unsupervised without a work apron or other protective clothing" while staff sat at a desk across the room.  *Id.* ¶¶ 6, 109-10.  While using the grinder, sparks flew onto Willauer's "unprotected clothing" and caught fire.  *Id.* ¶¶ 7, 113.  The fire melted Willauer's shirt and burned his flesh.  *Id.* ¶ 113-114.  Nonetheless, Willauer did not put down the grinder until its wheel stopped turning as he was instructed.  *Id.* ¶ 7.  He then sought out the staff to get their attention so they could put out the fire on his body.  *Id.* ¶¶ 114, 116.  Willauer was doused with a fire extinguisher.  *Id.* ¶ 115.  A helicopter transported Willauer to Thomas Jefferson University Hospital, where he remained for six weeks while he was treated for his injuries.  *See id.* ¶¶ 120, 124-37.  Among other injuries, Willauer suffered third degree burns on 27% of his body.  *Id.* ¶ 128.

Plaintiffs bring nine claims against the School District, the Intermediate Unit, and Vita.[4] The Intermediate Unit and Vita have moved to dismiss all of Plaintiffs' claims except their

---

[4] Plaintiffs bring the following claims:

1. Discrimination and Denial of Benefits under Section 504 – Willauer v. the School District and the Intermediate Unit;

2. Intentional Discrimination under the ADA – Willauer v. the School District and the Intermediate Unit;

3. Section 1983 Claim for Enforcement of the ADA – Willauer v. the School District, the Intermediate Unit, and Vita;

claims for Breach of Fiduciary Duty (Count VI)[5] and Negligent Infliction of Emotional Distress (Count VII).  *See* ECF No. 9.  The School District has moved to dismiss all of Plaintiffs' claims except for Willauer's Section 504 (Count I) and ADA (Count II) claims.  *See* ECF No. 10.

## II.    LEGAL STANDARD

A court can dismiss a plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff "fail[ed] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding the motion, the Court should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotation omitted).  If the plaintiff is not

---

4.    State-Created Danger Section 1983 Claim for Violation of the Fourteenth Amendment – Willauer v.  the School District, the Intermediate Unit, and Vita;

5.    Negligence – Willauer v. the School District, the Intermediate Unit, and Vita;

6.    Breach of Fiduciary Duty – Willauer v. the School District, the Intermediate Unit, and Vita;

7.    Intentional Infliction of Emotional Distress – All Plaintiffs v. the School District, the Intermediate Unit, and Vita;

8.    Negligent Infliction of Emotional Distress – All Plaintiffs v. the School District, the Intermediate Unit, and Vita; and

9.    Loss of Consortium – Sandra and Christopher Willauer v. the School District, the Intermediate Unit, and Vita.

*See* ECF No. 1.

[5] Count VI—Breach of Fiduciary Duty—appears to be accidentally listed as Count VII in the Complaint.  *See* ECF No. 1.  The Court will refer to the Breach of Fiduciary Duty claims as Count VI, the Intentional Infliction of Emotional Distress claims as Count VII, the Negligent Infliction of Emotional Distress claims as Count VIII, and the Loss of Consortium claims as Count IX.

entitled to relief even when the Court accepts his factual allegations as true and construes the

complaint in the light most favorable to him, the Court may grant the motion to dismiss.  *See In*

*re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

## III.    DISCUSSION

### A.    Counts I and II – Discrimination & Denial of Benefits Under Section 504 and Intentional Discrimination Under the ADA

The Intermediate Unit argues that Willauer[6] has failed to state a claim under Section 504

of the Rehabilitation Act ("Section 504") and Title II of the Americans with Disabilities Act

("ADA").  *See* ECF No. 9-1 at 4-7.[7]  Section 504 prohibits any "federally funded 'program or

activity'" from "discriminating based on disability."  *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154,

159 (2017) (citing 29 U.S.C. § 794(a)).  The ADA prohibits any "'public entity' from

discriminating based on disability."  *Id.* (citing 42 U.S.C. §§ 12131-12132).  Both Section 504

---

[6] The Intermediate Unit also argues that the Court should dismiss Sandra and Christopher Willauer's Section 504 and ADA claims, but they did not bring such claims.  *Compare* ECF No. 9-1 at 5, *and* ECF No. 9-1 at 7, *with* ECF No. 1 at 25-26.  Vita also argues that the Court should dismiss Willauer's ADA claim, but Willauer only sued the Intermediate Unit and the School District, not Vita, under the ADA.  *Compare* ECF No. 9-1 at 6, *with* ECF No. 1 at 26.

[7] As a threshold matter, the Court has subject matter jurisdiction over Willauer's Section 504 and ADA claims—even though he does not allege that he exhausted his administrative remedies— because Willauer only seeks compensatory damages under Section 504 and the ADA.  *See* ECF No. 1 ¶¶ 44, 151, 165  (requesting compensatory damages for Section 504 and ADA claims); *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272-73 (3d Cir. 2014) (noting that when IDEA exhaustion requirements apply to a Section 504 or ADA claim, a plaintiff is required to "exhaust[] . . . IDEA's administrative process . . . for the statute to 'grant[] subject matter jurisdiction to the district court []'" (quoting *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994)); *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 130 & n.6 (3d Cir. 2017) ("While we have some doubts as to whether IDEA exhaustion is a jurisdictional requirement, we are bound by [*Batchelor*]"); *Le Pape v. Lower Merion Sch. Dist.*, 103 F.4th 966, 979 (3d Cir. 2024) (explaining that the Supreme Court has held that "IDEA's exhaustion requirement did not apply" to an ADA claim "because the plaintiff sought compensatory damages, not equitable relief, and [IDEA's exhaustion requirement] 'applies *only* to suits that "see[k] relief . . . also available under" . . . IDEA'" (quoting *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147 (2023) (citing 20 U.S.C. § 1415(l))).

and the ADA therefore "promise non-discriminatory access to public institutions" for adults and children with disabilities. *Id.* at 170-171. Section 504 and ADA claims can be addressed together because almost identical standards apply. *See, e.g.*, *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) ("With limited exceptions, the same legal principles govern ADA and [Section 504] claims").

To establish a claim under Section 504 or the ADA, the plaintiff must prove that (1) he "has a disability, or was regarded as having a disability," (2) he "was 'otherwise qualified' to participate in school activities," and (3) he was "denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *See D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014) (quoting *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009)). For Section 504 claims, there are two additional requirements: (4) that "the school or board of education receives federal financial assistance;" and (5) that the denial of benefits or discrimination at issue was "solely on the basis of disability." *See Beam v. Western Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 209 (M.D. Pa. Feb. 24, 2016) (citation omitted) (requirement for receiving federal financial assistance); *CG*, 734 F.3d at 235-36 & n.11 (requirement for discrimination solely on the basis of disability); *id.* (noting that the ADA only requires that a disability be a cause of the discrimination).

When a plaintiff seeks compensatory damages under Section 504 or the ADA, the plaintiff must also show that any "discrimination was intentional." *See D.E.*, 765 F.3d at 269. A plaintiff can satisfy this intentionality requirement by showing that the defendant acted with deliberate indifference to the discrimination. *Id.* A defendant acts with deliberate indifference

when he (a) had "knowledge[8] that a federally protected right is substantially likely to be

violated," and (b) "fail[ed] to act[9] despite that knowledge." *Id.* (quoting *S.H. v. Lower Merion

Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013) (emphasis removed).

  Here, Willauer seeks compensatory damages and therefore must plead facts showing that

the Intermediate Unit intentionally discriminated against him. *See* ECF No. 1 ¶¶ 44, 151, 165.

However, the Intermediate Unit argues that Willauer has failed to state Section 504 and ADA

claims because he did not (1) plead facts showing that the Intermediate Unit denied him benefits

or discriminated against him because of his disability, or (2) plead facts showing that the

discrimination was intentional. *See* ECF No. 9-1 at 4-7

  First, Willauer has alleged facts showing that the Intermediate Unit denied him the

benefits of his program or discriminated against him because of his disability. Willauer claims

that he was injured because the Intermediate Unit both (1) failed to update his IEP after he

enrolled in the automative program, and (2) failed to implement his existing IEP. *See* ECF No. 1

¶¶ 98-99 (pleading that the Intermediate Unit failed to update his IEP to address the "dangerous

tools and applications" the automative vocational program used); *id.* ¶¶ 94-95 (stating that

Willauer's existing IEP still required "intensive instruction, modifications, and specially

designed instruction with extensive adaptations and substantial modifications of the general

education curriculum"). Where a student with a disability suffers an injury at school because the

school failed to update or implement his IEP, the school has discriminated against that student

because of his disability. *See Beam*, 165 F. Supp. 3d at 209-10 (finding that school officials'

---

[8] A defendant must have "actual knowledge"—allegations that a defendant "should have known"
are insufficient. *See D.E.*, 765 F.3d at 270 (quoting *S.H.*, 729 F.3d at 266 n.6 (emphasis
removed)).

[9] A defendant fails to act if the defendant made a "deliberate choice"—"negligence or
bureaucratic inaction" is insufficient. *See D.E.*, 765 F.3d at 269 (quoting *S.H.*, 729 F.3d at 263).

failures to update student's IEP and comply with student's existing IEP could show discrimination supporting a Section 504 claim because "[i]t was solely because of [the student's] disability that he was subject to a Section 504 educational plan, and it was precisely the inadequate Section 504 plan that failed to accommodate [the student's] needs, that allegedly caused [the student] to commit suicide"). Therefore, Willauer has alleged sufficient facts to show that he was denied the benefits of his program or discriminated against because of his disability. These facts are also sufficient to show that the Intermediate Unit discriminated against Willauer solely because of his disability for purposes of his Section 504 claim. *See id.* at 210.

Second, Willauer has alleged facts showing that the Intermediate Unit's discrimination was intentional. Willauer claims that the Intermediate Unit had actual knowledge that his IEP was not updated to respond to the new educational challenges that the automotive vocational program posed and that Willauer already required close supervision in educational contexts. *See* ECF No. 1 ¶¶ 78-91, 98-101. Willauer also claims that the Intermediate Unit did not create a new IEP for him or implement his existing IEP despite this knowledge. *See id.* ¶¶ 78-91, 95-101. Therefore, Willauer has alleged facts showing that the Intermediate Unit intentionally discriminated against him through deliberate indifference. *See Beam*, 165 F. Supp. 3d at 211-12 (finding plaintiffs alleged deliberate indifference where they claimed the school district "was aware of a disabled student's educational needs and health issues, but failed to develop and implement an appropriate plan in response"). Because Willauer has alleged facts showing that the Intermediate Unit intentionally discriminated against him because of his disability, the Court will deny the Intermediate Unit's motion to dismiss Willauer's Section 504 and ADA claims.

**B.      Count III – Section 1983 Claims for Enforcement of the ADA**

The Intermediate Unit, Vita, and the School District move to dismiss Willauer's Section 1983 Claim for Enforcement of the ADA.  They argue that Section 1983 cannot be used to "remedy violations of the ADA."  ECF No. 9-1 at 6 (quotation omitted); ECF No. 10-1 at 9-10. In response, Willauer argues that the Supreme Court's 2023 decision in *Talevski* controls and allows him to use Section 1983 to sue for violations of Title II of the ADA.  *See* ECF No. 1 ¶¶ 46-51 (citing *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023)); ECF No. 12 at 15-22 (same); ECF No. 13 at 9-15 (same).  The Court agrees with Defendants and finds that Section 1983 cannot be used to vindicate rights under Title II of the ADA for three reasons.

First, the Third Circuit Court of Appeals has held that plaintiffs cannot assert claims for violations of Title I of the ADA—which applies to employment discrimination—through Section 1983 because Title I's remedial scheme differs from Section 1983's remedial scheme.  *See Williams v. Pa. Hum. Rels. Comm'n*, 870 F.3d 294, 295, 298-300 (3d Cir. 2017) (noting (1) that Title I of the ADA includes an exhaustion requirement while Section 1983 allows plaintiffs to file "suits directly in federal court" and (2) that Title I of the ADA only imposes liability on employers while Section 1983 allows for imposing liability on individuals).  *Talevksi* does not address whether Title I of the ADA can be enforced through Section 1983.  *See Talevski*, 599 U.S. at 172 (holding that the Federal Nursing Home Reform Act can be enforced through Section 1983).  Therefore, *Williams* remains good law, and its holding might also apply to Title II of the ADA.  *See Zicherman v. Univ. of Del.*, Civ. Action No. 24-00162, 2025 WL 71978, at *5-6 (D. Del. Jan. 10, 2025) (addressing a Section 1983 claim to recover for violations of Title II of the ADA and concluding that "*Williams* is on point" because "*Williams* affirmatively cited two cases that dealt explicitly with Title II").

Second, even if *Williams* does not control here, *Talevski*'s reasoning suggests that Section 1983 still cannot be used to vindicate rights under Title II of the ADA. *See id.* (applying *Talevski* to conclude that Section 1983 cannot be used to enforce Title II of the ADA). In *Talevski*, the Supreme Court explained that whether Section 1983 can be used to enforce statutory rights turns on whether Congress intended for Section 1983 to be available to enforce those rights. *See Talevski*, 599 U.S. at 186-87. For example, when a statute's enforcement scheme is incompatible with enforcement under Section 1983, then Congress likely intended to preclude Section 1983 claims based on that statute. *Id.* Here, Title II of the ADA is incompatible with Section 1983 because Section 1983 would give plaintiffs "remedies that were unavailable" under Title II of the ADA. *See Zicherman*, 2025 WL 71978, at *5-6 (quoting *Talevski*, 599 U.S. at 189) (noting Title II of the ADA only applies to "public entities, not individuals" and that Section 1983 is therefore incompatible with Title II of the ADA because it would "expand the categories of permissible defendants under the ADA"); *id.* (collecting cases and finding that "courts to have considered [Section] 1983's application to the ADA post-*Talevski* have concluded that [Section] 1983 remains unavailable for vindicating ADA rights").

Third, the Third Circuit has held that Section 1983 cannot be used to vindicate a plaintiff's rights under Section 504. *See A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 806 (3d Cir. 2007) ("[W]e conclude that [Section] 1983 is not available to provide a remedy for defendants' alleged violations of A.W.'s rights under Section 504"). Because Title II of the ADA uses Section 504's remedial scheme, *A.W.* suggests that the Third Circuit would also hold that Section 1983 cannot be used to remedy violations of Title II of the ADA. *See Zicherman*, 2025 WL 71978, at *5 (citing 42 U.S.C. § 12133 (citing 29 U.S.C. § 794a)) (noting that Title II of the ADA "incorporates the enforcement scheme of [Section] 505 of the Rehabilitation Act," which is

Section 504's enforcement provision); *see also Taylor v. Altoona Area Sch. Dist.*, 513 F. Supp. 2d 540, 563 (W.D. Pa. 2007) ("[T]he Court is convinced that [*A.W.*] controls the question of [Section] 1983 liability under Title II of the ADA, thereby precluding reliance on [Section] 1983 as a basis for remedying violations of Title II"). Therefore, the Court will dismiss Willauer's Section 1983 ADA claim with prejudice[10] because Section 1983 cannot be used to vindicate rights held under the ADA.

### C.    Count IV – Section 1983 Claims for Fourteenth Amendment Violations

The Intermediate Unit, Vita, and the School District all move to dismiss Willauer's Section 1983 claim to recover for Fourteenth Amendment violations based on a state-created danger theory. ECF No. 9-1 at 7-9; ECF No. 10-1 at 11-19. The Court will deny all three motions for the reasons that follow.

#### 1.    Hal Vita

Vita argues that Willauer has failed to plead facts establishing a Fourteenth Amendment violation based on a state-created danger theory. ECF No. 9-1 at 7-9. The "threshold question in any [Section] 1983 lawsuit is whether the plaintiff has sufficiently alleged a deprivation of a constitutional right."[11] *See L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016). The Fourteenth Amendment's Due Process Clause includes a substantive component that "protects

---

[10] The Court must allow Plaintiffs to amend the Complaint "unless amendment would be inequitable or futile." *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). An amendment is futile if the complaint would still "fail to state a claim upon which relief could be granted." *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). Here, amendment is futile because a "[Section] 1983 claim is incompatible with the ADA." *See Zicherman*, 2025 WL 71978, at *5. Therefore, the Court will dismiss Willauer's Section 1983 claims for ADA violations with prejudice.

[11] As noted above, Section 1983 can also be used to enforce certain federal statutory rights. *See, e.g.*, *Talevski*, 599 U.S. at 183 (noting that certain "federal statutes have the potential to create [Section] 1983-enforceable rights").

individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."[12]  *See id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).  For example, the government violates a citizen's substantive due process rights where the government's actions create a danger to a citizen.  *See id.* at 242.  This is known as the "'state-created danger' exception" to the general rule that the government cannot be liable for the "failure to protect an individual against private violence."  *See id.* at 241-42 (first quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996); then quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)).

Under the state-created danger exception, state actions that create a danger to a citizen can amount to a substantive due process violation when four elements are satisfied: (1) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all;" (2) "the harm ultimately caused" by the state actor's actions "was foreseeable and fairly direct;" (3) the "state actor acted with a degree of culpability that shocks the conscience;" and (4) "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the [state actor's] acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general."  *See id.* at 242 (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).  Here, Willauer has alleged sufficient facts to support each element and to show that Vita violated his substantive due process rights by creating a danger to him.

---

[12] The Fourteenth Amendment's Due Process Clause states that  "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law."  *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170 (3d Cir. 2017) (quoting U.S. Const. amend. XIV, §1)

### a.     Affirmative Use of Authority to Create or Increase a Danger

An affirmative use of state authority to create or increase a danger to a citizen exists where a state actor misuses state authority to depart from the status quo.  *See id.*  (noting that this element requires a "misuse of state authority, rather than a failure to use it"); *id.* at 243 (noting that courts should consider whether actions "resulted in a departure from [the] status quo" to determine whether a state actor created a danger).  The action at issue must "create a new danger" to a citizen or "render him more vulnerable to danger than had the district not acted at all."  *See Beam*, 165 F. Supp. 3d at 215.

Here, Willauer has alleged that Vita directed staff to give Willauer—a student with significant disabilities—an electric grinder to use unsupervised and without protective clothing. *See* ECF No. 1 ¶¶ 3-4, 17, 64-75 (pleading Willauer's disabilities); *id.* ¶¶ 6, 104, 109, 184 (pleading Vita directed staff to give Willauer the electric grinder to use unsupervised and without protective clothing).  Willauer has therefore alleged sufficient facts at this stage of the case to show that Vita acted affirmatively to disrupt the status quo and to create a danger to Willauer. *See, e.g.*, *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017) (finding affirmative act where a high school football coach sent a student back to practice after the student sustained a hit to his head and was exhibiting symptoms of a concussion); *Fiedler v. Stroudsburg Area Sch. Dist.*, 427 F. Supp. 3d 539, 553 (M.D. Pa. 2019) (finding affirmative act where gym teacher forced student to play basketball in gym class despite a physician's instructions that the student avoid sports); *Weiser v. Elizabethtown Area Sch. Dist.*, Civ. Action No. 17-625, 2018 WL 1071929, at *7 (E.D. Pa. Feb. 27, 2018) (finding affirmative act where school required a student with autism and other cognitive disabilities to walk home from school along a dangerous road).

### b.      Foreseeable and Fairly Direct Harm

A risk of harm can be foreseeable because of the state actor's experience or common sense.  *Cf. L.R.*, 836 F.3d at 245.  The foreseeability requirement is satisfied at the motion to dismiss stage if the plaintiff alleges "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm."  *Id.* (emphasis removed).  A risk of harm is fairly direct if the state actor's action was the "catalyst" for the injury.  *Cf. id.* at 245-46 (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 909-10 (3d Cir. 1997)).  A risk is not direct if there is "randomness and attenuation [in] play" between the state actor's action and the injury.  *Id.*

Here, Willauer has alleged facts showing that Vita was aware of Willauer's disabilities and that Vita's decision to give him the electric grinder to use unsupervised and without protective clothing was the catalyst for his injuries.  *See* ECF No. 1 ¶¶ 67, 76-92 (claiming Defendants were aware of Willauer's disabilities); *id.* ¶¶ 184, 192 (claiming Vita's decision to give Willauer the grinder caused his injuries).  These facts are sufficient to show that Willauer's injuries were a foreseeable and fairly direct consequence of giving him an electric grinder to use unsupervised.  *See, e.g., Weiser*, 2018 WL 1071929, at *6 (finding harm at issue—that a student with disabilities was hit and killed while walking home from school—was a foreseeable and fairly direct harm because the school "knew of [student's] limitations and the needs that arose from his disabilities" and "also knew of the dangerousness of [the street] that he had to cross to get to and from school").

### c.      Conscience-Shocking Conduct

Whether behavior is conscience-shocking "depends on the context in which the action takes place."  *See L.R.*, 836 F.3d at 246.  In "hyperpressurized environment[s]" that require "a

14

quick decision," a state actor's behavior is only conscience-shocking if the state actor "inten[ded] to harm." *See id.* (quoting *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006)).  However, "where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference [to harm] is sufficient" to show conscience-shocking behavior.  *See id.* (quoting *Sanford*, 456 F.3d at 309).  In the state-created danger context, a state actor acts with deliberate indifference where there is a "conscious disregard of a substantial risk of serious harm."  *See id.* (quoting *Vargas v. City of Phila.*, 783 F.3d 962, 973-74 (3d Cir. 2015)).  It does not require "actual knowledge of a risk of harm" if "the risk is so obvious that it should be known."  *See id.* (quoting *Phillips*, 515 F.3d at 241); *but see H.U. v. Northampton Area Sch. Dist.*, No. 20-2996, 2021 WL 4810170, at *3 (3d Cir. Oct. 15, 2021) (noting a state employee cannot be deliberately indifferent to a risk "she did not know of" (emphasis removed)).  Still, "[m]ere negligence is not enough to shock the conscience."  *See Brown v. Farrell*, 293 F. App'x 147, 150 (3d Cir. 2008) (quoting *Sanford*, 456 F.3d at 311) (finding teacher's decision to use one safety precaution over another while inflating a tire in class could not amount to deliberate indifference).

Here, Willauer has not alleged any facts suggesting that Vita had to make a quick decision regarding whether to have staff give Willauer the electric grinder to use unsupervised and without protective clothing.  *See* ECF No. 1 ¶¶ 6, 104, 108–09.  Therefore, Willauer only needs to show Vita acted with deliberate indifference to establish conscience-shocking behavior. *See L.R.*, 836 F.3d at 246 (finding that deliberate indifference standard applied because none of the facts alleged "indicate that [the teacher] faced circumstances requiring him to make a quick decision" regarding whether to release a kindergarten student to a stranger).  Willauer has alleged that Vita was aware of Willauer's significant disabilities and instructional requirements but still directed staff to give Willauer the electric grinder to use unsupervised and without protective

clothing. *See* ECF No. 1 ¶¶ 4-6, 76-84, 86-92 (pleading Vita was aware of Willauer's disabilities, including that he "knew [Willauer] required constant, intensive, individual attention and instruction to function within any classroom or vocational setting" but still directed staff to give him the electric grinder "without adequate supervision or protective clothing"). Therefore, Willauer has alleged sufficient facts to show that Vita was deliberately indifferent to the harm Willauer might suffer from using an electric grinder without supervision. *See Weiser*, 2018 WL 1071929, at *6 (finding plaintiffs pled conscience-shocking behavior where school assigned "an autistic seventh grader to walk to and from school, knowing that he had to cross an extremely dangerous street without assistance").

### d.    Foreseeable Victim

This element "requires that some sort of relationship exist between the state actor and the plaintiff such that the plaintiff was a foreseeable victim of the state actor's conduct." *See L.R.*, 836 F.3d at 247. For example, the relationship between a teacher and a student satisfies this requirement. *See id.* Here, Willauer has alleged sufficient facts to show that he was a foreseeable victim. Specifically, Willauer has alleged that Vita – an Intermediate Unit staff member -- directed other Intermediate Unit staff to give Willauer the electric grinder. *See* ECF No. 1 ¶¶ 6, 104.

Because Willauer has alleged facts to support all four elements of a state-created danger claim, the Court will deny Vita's motion to dismiss Willauer's Section 1983 claim for a Fourteenth Amendment violation.

### 2.    Intermediate Unit & School District

The Intermediate Unit and the School District also argue that Willauer has not alleged sufficient facts to support his state-created danger claim. *See* ECF No. 9-1 at 7-9; ECF No. 10-1

16

at 11-19.  Although their motions focus on whether Willauer alleged an underlying constitutional

violation, because Willauer's claim against Vita survives, whether Willauer's claim against the

Intermediate Unit and the School District can proceed now turns on whether he has alleged a

basis for municipal liability under Section 1983.[13]

A municipality cannot be liable under Section 1983 "for the unconstitutional acts of its

employees on a theory of *respondeat superior*."  *See, e.g.*, *Thomas v. Cumberland Cnty.*, 749

F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

Rather, a municipality can only be liable under Section 1983 where the municipality caused the

constitutional violation.  *See Hightower v. City of Phila.*, 130 F.4th 352, 356 (3d Cir. 2025)

(explaining that a city can only be liable for its employee's constitutional violation if "the city's

choices were the 'moving force' behind the constitutional violation" (quoting *Monell*, 436 U.S. at

694)).  A municipality causes a constitutional violation when it either (1) had "an

unconstitutional policy or custom" that "led to [the plaintiff's] injuries," or (2) had "a failure or

inadequacy . . . that 'reflects a deliberate or conscious choice.'"  *Forrest v. Parry*, 930 F.3d 93,

---

[13] Some courts view the state-created danger exception as a method to establish municipal liability under Section 1983 in addition to *Monell*.  *See M.T. ex rel. Amber H. v. Uniontown Area Sch. Dist.*, Civ. No. 20-614, 2021 WL 807713, at *3 (W.D. Pa. Mar. 3, 2021) ("There are potentially two theories under which a [S]ection 1983 claim may be brought against the School District: the 'state created danger' theory and the municipal liability theory as set forth in *Monell v. Department of Social Services.*, 436 U.S. 658 (1978)").  However, this Court agrees with Judge Schiller's view that the state-created danger theory is a way to establish a constitutional violation, which is separate from the *Monell* inquiry of whether a municipality should be liable for that constitutional violation under Section 1983.  *See M.B. ex rel. T.B. v. City of Phila.*, No. Civ. A. 00-5223, 2003 WL 733879, at *3-6 (E.D. Pa. Mar. 3, 2003) (concluding that the Third Circuit intended "that proving a constitutional violation of state actors under the state-created danger theory by itself [would not be] enough to implicate municipal liability" and that a *Monell* analysis is required to determine whether a municipality should be liable for a constitutional violation (citing *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996)).

105 (3d Cir. 2019) (quoting *Est. of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)).

Where a plaintiff alleges that a municipality's failure or inadequacy resulted in a constitutional violation, the plaintiff must show that the "failure or inadequacy amount[ed] to deliberate indifference [to the plaintiff's constitutional rights] on the part of the municipality." *Id.* at 106 (citing *Est. of Roman*, 914 F.3d at 798). Deliberate indifference under *Monell* requires that a municipal actor "disregarded a known or obvious consequence of his action." *See Hightower*, 130 F.4th at 352 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). A plaintiff must show three things to establish the municipality's deliberate indifference: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling" the situation; "and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *See Forrest*, 930 F.3d at 106 (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

Plaintiffs therefore typically establish deliberate indifference by showing that there was a "pattern of similar constitutional violations" that notified the municipality that it was being deliberately indifferent to constitutional rights by failing to respond to the violations. *See Hightower*, 130 F.4th at 357 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). However, deliberate indifference to constitutional rights can also be shown by a single incident where the risk of a constitutional violation was "obvious." *Thomas*, 749 F.3d at 223 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).[14] For example, in *L.R. v. School District of*

---

[14] The Court recognizes that the Third Circuit has recently cast doubt on the single-incident theory of municipal liability. *See Hightower*, 130 F.4th at 357 ("True, the Supreme Court has 'hypothesized' that 'in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference' . . . But it has never found this bar satisfied.").

*Philadelphia* a kindergarten student was sexually assaulted after her teacher released her to a stranger. *See L.R. v. Sch. Dist. of Phila.*, 60 F. Supp. 3d 584, 586 (E.D. Pa. 2014), *aff'd on other grounds*, 836 F.3d 235 (3d Cir. 2016). The plaintiff there did "not allege a pattern of similar constitutional violations" to support her *Monell* claims. *Id.* at 600. Even though the single-incident theory of municipal liability only applies in a "narrow range of circumstances," the court still found that plaintiff alleged facts to survive a motion to dismiss because child abduction is a "highly predictable consequence" of failing to train employees on the school's "policies for release of pupils during the school day." *See id.* at 599-601.

Here, Willauer does not clearly plead that the Intermediate Unit or the School District had an unconstitutional policy or custom that caused his injuries. *See generally* ECF No. 1. Rather, Willauer alleges that the Intermediate Unit and the School District are liable because they failed to train their employees on how to supervise students with disabilities who are using power tools. *See* ECF No. 1 ¶ 190. However, Willauer does not allege a pattern of constitutional violations to establish deliberate indifference. *See Hightower*, 130 F.4th at 357. Therefore, Willauer's claim can only proceed if the need to train employees on how to supervise students with disabilities using power tools was "obvious." *See Thomas*, 749 F.3d at 223 (quoting *Canton*, 489 U.S. at 390 n.10). Here, Willauer alleges that the need for training was obvious. *See* ECF No. 1 ¶ 190. Although the single-incident theory of liability is disfavored, Willauer has alleged sufficient facts to support his claim at this stage and neither the Intermediate Unit nor the School District have challenged this theory.[15] Therefore, the Court will deny their motions to dismiss. *See L.R.*, 60 F. Supp. 3d at 599-601.

---

[15] The Intermediate Unit does not address municipal liability in its motion to dismiss, while the School District only briefly notes that the Complaint does not allege it had a policy or custom

### D.    Count V – Negligence

The Intermediate Unit and the School District have both moved to dismiss Willauer's

negligence claim based on governmental immunity.  *See* ECF No. 9-1 at 9; ECF No. 10-1 at 19-

21.  Willauer responds that the Intermediate Unit and the School District are not immune because

the real property exception to governmental immunity applies.  *See* ECF No. 12 at 28-30; ECF

No. 13 at 29-31.  Pennsylvania law grants immunity from tort claims to local agencies like

school districts and intermediate units through the Political Subdivision Tort Claims Act.  *See* 42

Pa. Cons. Stat. § 8541 ("[N]o local agency shall be liable for any damages on account of any

injury to a person or property caused by any act of the local agency or an employee thereof or

any other person"); *see also Joseph M. v. Ne. Educ. Intermediate Unit 19*, 516 F. Supp. 2d 424,

443 (M.D. Pa. 2007) (noting a school district and an intermediate unit are both local agencies

under the Political Subdivision Tort Claims Act).  Therefore, tort claims against local agencies

are barred unless one of the exceptions to governmental immunity applies.  *See* 42 Pa. Cons.

Stat. § 8542(b) (listing exceptions).  For example, a local agency can be held liable for

negligence in the "care, custody or control of real property in the possession of the local agency."

*Id.* §§ 8542(a), 8542(b)(3).

A plaintiff asserting this exception to governmental immunity—called the real property

exception—therefore must show that (1) "the injury was caused by the negligent acts of the local

agency acting within the scope of its duties," (2) "with respect to the care, custody, or control of

real property," (3) "in the possession of the local agency."  *See Brewington ex rel. Brewington*,

199 A.3d 348, 355 (Pa. 2018) (citing 42 Pa. Cons. Stat. § 8542); *see also Taylor v. Ne. Bradford*

---

and does not address the failure or inadequacy theory of liability.  *See* ECF No. 9-1 at 7–9; ECF
No. 10-1 at 18.

*Sch. Dist.*, 101 A.3d 144, 148 (Pa. Commw. Ct. 2014) (noting the injured party must show that

the real property exception applies).[16]  For the third requirement, "ownership of real property is

not required for possession to be found."  *Glencannon Homes Ass'n, Inc. v. N. Strabane Twp.*,

116 A.3d 706, 722 (Pa. Commw. Ct. 2015).  However, the exception should still be "narrowly

construed" such that liability only arises when an agency "has 'total control over the premises.'"

*See Johnson v. City of Phila.*, 975 F.3d 394, 404 (3d Cir. 2020) (first quoting *Brewington*, 199

A.3d at 356; and then quoting *Sweeney v. Merrymead Farm, Inc.*, 799 A.2d 972, 977 (Pa.

Commw. Ct. 2002)); *see also Glencannon*, 116 A.3d at 723 (noting an agency is in possession of

real property if it has "total control over the premises . . . limited control or mere occupation for a

limited period of time is insufficient to impose liability" (quoting *Sweeney*, 799 A.2d at 977)).

    Further, where a plaintiff asserting the real property exception claims that chattel caused

his injuries, courts must determine whether the chattel was real property or personal property.

*See LoFurno v. Garnet Valley Sch. Dist.*, 904 A.2d 980, 983 (Pa. Commw. Ct. 2006); *Taylor*, 101

A.3d at 148 ("Whether chattel is personalty or a fixture is a question of law for the court to

decide").  Pennsylvania courts apply the following three principles to determine whether chattel

is real property or personal property: (1) chattel that is not annexed to the property "always

remain[s] [personal property];" (2) chattel that is "annexed to the property" and "cannot be

removed without material injury to the real estate or to" itself is real property; and (3) chattel that

is annexed to the property but can be removed "without destroying or materially injuring the

chattel[] . . . or the property to which [it is] annexed" can be either real property or personal

---

[16] A plaintiff must also show that "damages would be recoverable if the injury were caused by a
person not having an available defense under governmental immunity generally, or official
immunity."  *See Brewington*, 199 A.3d at 355 (citing 42 Pa. Cons. Stat. § 8542).  Defendants
have not claimed Willauer fails to satisfy this requirement.  *See* ECF No. 9-1 at 9; ECF No. 10-1
at 19-21.

property "depending on the intention of the parties at the time" it was annexed. *See LoFurno*, 904 A.3d at 983 (quoting *Clayton v. Lienhard*, 167 A. 321, 322 (Pa. 1933)). Under this test, "only where [personal property] has been attached to [real property] does the question of the parties' intent become relevant." *Taylor*, 101 A.3d at 149 (quoting *Blocker v. City of Phila.*, 763 A.2d 373, 375 (Pa. 2000)). Here, the Court will deny the Intermediate Unit's motion to dismiss because Willauer has alleged sufficient facts suggesting that the real property exception to governmental immunity could apply to it. However, the Court will grant the School District's motion to dismiss because Willauer has not alleged facts showing that the real property exception applies to it.

### 1.    Intermediate Unit

Willauer claims that the real property exception to governmental immunity applies to the Intermediate Unit because the work bench he was stationed at and the curtain surrounding the work bench were both affixed to the Intermediate Unit's real property and caused his injuries. *See* ECF No. 1 ¶¶ 110-11 (claiming (1) that "[t]he opaque curtain that was enclosed around [him] when he was injured was fixed to and/or attached to the real property of [the Intermediate Unit]" and (2) that "[t]he work bench/station that [he] was using when he was injured was fixed to and/or attached to the real property of [the Intermediate Unit]"). Therefore, Willauer has alleged sufficient facts at this stage to show that the work bench and the curtain qualify as real property and that the Intermediate Unit possessed this real property. *See Brittain v. Cnty. of Northampton*, No. Civ. A 93-2525, 1993 WL 283887, at *3 (E.D. Pa. July 23, 1993) (denying motion to dismiss because "Plaintiff alleges that the metal hook was attached to the gym wall. Because no discovery has occurred, the Court cannot determine whether the hook could have been removed

without material injury to the real estate or to itself, nor can it determine the intent of the parties when the hook was attached to the wall").[17]

Additionally, when reviewing the Complaint in a light favorable to Willauer, he has also alleged facts suggesting that the Intermediate Unit acted negligently[18] regarding the curtain and that this contributed to his injuries. *See* ECF No. 1 ¶ 6 ("[A] screen was closed around Willauer which prevented staff from observing him at all"); *id.* ¶ 109 ("Defendants . . . pulled a curtain around [Brendan] so that he could not even be observed by [the Intermediate Unit's] staff"); *id.* ¶ 110 (describing the curtain as "opaque"). However, Willauer does not allege facts showing how the Intermediate Unit negligently controlled the work bench he was stationed at or that the work bench contributed to his injury. *See generally* ECF No. 1. Still, because Willauer alleges that the curtain prevented staff from supervising him with the electric grinder, Willauer has alleged facts sufficient to show the real property exception to governmental immunity applies at this stage. The Court will therefore deny the Intermediate Unit's motion to dismiss this claim.

### 2.    School District

Willauer also argues that the real property exception applies to his negligence claim against the School District. *See* ECF No. 13 at 29-31. However, Willauer only alleges that the "opaque curtain" and the "work bench/station" at issue were "fixed to and/or attached to the real

---

[17] The Intermediate Unit may raise this issue again at the summary judgment stage. *See A.M. v. Landscape Structures, Inc.*, Civ. No. 14-CV-1376, 2015 WL 6523116, at *2 & n.2 (M.D. Pa. Oct. 28, 2015) (denying motion to dismiss because from "the face of the complaint" and "viewing the complaint in the light most favorable" to the third-party plaintiff the Court is "unable to determine" whether school defendants intended mulch on playground to become a fixture while noting the school defendants "are free to raise their immunity argument again at the summary judgment stage, at which point we can examine all evidence produced during discovery").

[18] "In Pennsylvania, the elements of negligence are: a duty to conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff." *See Brewington*, 199 A.3d at 152.

property of [the Intermediate Unit]."  ECF No. 1 ¶¶ 110-11.  Willauer does not allege facts

suggesting that the School District had possession of the curtain, the work bench, or the real

property that they were attached to.  *See generally* ECF No. 1.  Because Willauer does not allege

that the School District had possession of the real property at issue, the Court will dismiss

Willauer's negligence claim against the School District without prejudice.[19]  *See Johnson*, 975

F.3d at 404 (noting exception only applies where agency has "total control over the premises"

(quoting *Sweeney*, 799 A.2d at 977)).

### E.    Count VI – Breach of Fiduciary Duty

The School District also argues that governmental immunity bars Willauer's breach of

fiduciary duty claim.  *See* ECF No. 10-1 at 19-21.  Willauer again argues that the real property

exception to governmental immunity applies to this claim.[20]  *See* ECF No. 13 at 29-31; ECF No.

20 at 7-9.  The real property exception to governmental immunity only applies to negligent acts.

*See* 42 Pa. Cons. Stat. § 8542(a)(2) (stating exceptions only apply if "[t]he injury was caused by

---

[19] The Court will dismiss Willauer's negligence claim against the School District without
prejudice because Willauer could amend his Complaint to include facts that show the real
property exception applies.  *See Grayson*, 293 F.3d at 108 (noting the Court must allow
amendment unless it "would be inequitable or futile").

[20] Willauer asserts that governmental immunity does not apply to his breach of fiduciary duty
claim because it "constitutes actual fraud, actual malice or willful misconduct."  ECF No. 1 ¶
215.  Although Pennsylvania law provides that "government employees whose conduct goes
beyond negligence" and instead "constitutes 'a crime, actual fraud, actual malice or willful
misconduct'" do not have immunity from suit, this exception only removes immunity from
employees—and not government agencies—for injuries resulting from the employees' willful
misconduct.  *See Banks v. City of Phila.*, Civ. Action. No. 14-82, 2016 WL 1238783, at *3 (E.D.
Pa. Mar. 30, 2016) (quoting *Spiker v. Whittaker*, 553 F. App'x 275, 281 n.6 (3d Cir. 2014)
(quoting 42 Pa. Cons. Stat. § 8550)); *see also Viney v. Jenkintown Sch. Dist.*, 51 F. Supp. 3d 553,
557 (E.D. Pa. 2014) ("Pennsylvania courts have . . . concluded that [S]ection 8550 'only
abolishes immunity for willful misconduct which pertains to local agency employees . . . and
does not affect the immunity of local agencies'" (quoting *King v. Breach*, 540 A.2d 976, 979 (Pa.
Commw. Ct. 1988)).

the negligent acts of the local agency or an employee thereof"); *West ex rel. S.W. v. Pittsburgh Pub. Schs.*, 327 A.3d 340, 346 (Pa. Commw. Ct. 2024) ("[T]he law is settled that 'where a plaintiff has averred willful misconduct on the part of local agency employees, [S]ection 8542(a)(2) . . . bars recovery from the local agency because liability may be imposed on a local agency only for negligent acts" (quoting *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Commw. Ct. 2014))).

A plaintiff can base his breach of fiduciary duty claim on a defendant's negligent or intentional acts. *See Marion v. Bryn Mawr Trust Co.*, 288 A.3d 76, 88 (Pa. 2023) ("To prevail on a claim of breach of fiduciary duty, a plaintiff must show [(1)] 'the existence of a fiduciary relationship between [the plaintiff] and [the defendant], [(2)] that [the defendant] negligently or intentionally failed to act in good faith and solely for [the plaintiff's] benefit, and [(3)] that [the plaintiff] suffered an injury caused by [the defendant's] breach of [its] fiduciary duty.'" (quoting *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. Ct. 2020))). Here, Willauer does not specify whether his breach of fiduciary duty claim is based on the School District's negligent or intentional acts. *See* ECF No. 1 ¶ 212. The Court will construe the Complaint in a light favorable to Willauer and assume Willauer's breach of fiduciary duty claim is based on negligent acts for the purposes of resolving this motion to dismiss. However, even assuming Willauer's breach of fiduciary duty claim is based on negligent acts, Willauer has still not alleged facts showing that the real property exception applies to the School District. *See* ECF No. 1 ¶¶ 110-11 (alleging that the "opaque curtain" and the "work bench/station" at issue were both "fixed to and/or attached to the real property of [the Intermediate Unit]"). Therefore, the Court will dismiss Willauer's breach of fiduciary duty claim against the School District without

prejudice.[21]  *See Johnson*, 975 F.3d at 404 (noting exception only applies where agency has "total control over the premises" (quoting *Sweeney*, 799 A.2d at 977)).

### F.    Count VII – Intentional Infliction of Emotional Distress

Plaintiffs have brought a claim for intentional infliction of emotional distress against the Intermediate Unit, the School District, and Vita.  *See* ECF No. 1.  Defendants have moved to dismiss this claim as to all defendants.  *See* ECF No. 9-1 at 10; ECF No. 10-1 at 19-21.  There are four elements a plaintiff must show to establish an intentional infliction of emotional distress claim: (1) that "the conduct [was] extreme and outrageous;" (2) that "the conduct [was] intentional or reckless;" (3) that the conduct "cause[d] emotional distress;" and (4) that the emotional distress was "severe."  *See Jordan v. Pa. State Univ.*, 276 A.3d 751, 775 (Pa. Super. Ct. 2022) (quoting *Madreperla v. Williard Co.*, 606 F. Supp. 874, 879-80 (E.D. Pa. 1985)).  A plaintiff should only prevail on an intentional infliction of emotional distress claim in "egregious cases."  *See id.* (quoting *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997)).

### 1.    Plaintiffs' Claim Against the School District

The School District argues that governmental immunity bars Plaintiffs' claim.  *See* ECF No. 10-1 at 19-21.  Plaintiffs assert that the real property exception to governmental immunity applies.  *See* ECF No. 13 at 29-31; ECF No. 20 at 7-9.  However, the real property exception only applies to negligent acts; it does not apply to intentional torts like intentional infliction of emotional distress.  *See* 42 Pa. Cons. Stat. § 8542(a)(2); *West*, 327 A.3d at 343-44, 346.  To the extent that Plaintiffs are asserting that a "willful misconduct" exception to governmental

---

[21] The Court will dismiss this claim against the School District without prejudice because Willauer could amend his Complaint to include facts that show the real property exception applies.  *See Grayson*, 293 F.3d at 108 (noting the Court must allow amendment unless it "would be inequitable or futile").

immunity applies, this argument fails because the willful misconduct exception only applies to government employees—not government agencies.  *See* ECF No. 1 ¶ 219; *Banks v. City of Phila.*, Civ. Action. No. 14-82, 2016 WL 1238783, at *3 (E.D. Pa. Mar. 30, 2016); *Viney v. Jenkintown Sch. Dist.*, 51 F. Supp. 3d 553, 557 (E.D. Pa. 2014).  Therefore, the Court will dismiss Plaintiffs' intentional infliction of emotional distress claim against the School District with prejudice.[22]  *See Banks*, 2016 WL 128783, at *3.

### 2.    Plaintiff's Claim Against the Intermediate Unit

The Intermediate Unit only makes one argument to dismiss Plaintiff's intentional infliction of emotional distress claim: that the Intermediate Unit's conduct is not "extreme and outrageous."  ECF No. 9-1 at 10.  The Intermediate Unit has not moved to dismiss based on governmental immunity even though it applies here.  *See* ECF No. 9-1 at 9-10 (asserting governmental immunity in response to Willauer's negligence claim only); *West*, 327 A.3d at 343-44, 346.

The Court may dismiss a claim where its inadequacy is apparent.  *See Wash. Petroleum & Supply Co. v. Girard Bank*, 629 F. Supp. 1224, 1230-31 (M.D. Pa. 1983) ("[I]t is well settled that 'even if a party does not make a formal motion to dismiss, the Court may on its own initiative dismiss the complaint for failure to state a claim upon which relief can be granted . . . where the inadequacy of the complaint is apparent as a matter of law'" (quoting *Coggins v. Carpenter*, 468 F. Supp. 270, 279 (E.D. Pa. 1979)); *Goodwin v. Castille*, 465 F. App'x 157, 163 (3d Cir. 2012) (affirming district court's decision to dismiss amended complaint *sua sponte* as a "rare case

---

[22] The Court will dismiss Plaintiffs' claims with prejudice because amendment would be futile given that the School District is entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act.  *See, e.g.*, *Grayson*, 293 F.3d at 108 (noting the Court must allow amendment unless it "would be inequitable or futile"); *Chandler*, 2021 WL 753043, at *2.

where *sua sponte* dismissal was appropriate" because "legislative immunity was an absolute bar to [the] action"). Because Plaintiffs have had the opportunity to respond to the governmental immunity arguments raised in the School District's motion to dismiss, the Court will dismiss Plaintiffs' intentional infliction of emotional distress claim against the Intermediate Unit with prejudice based on governmental immunity.[23]  *See Chen v. KPMG LLP*, No. 21-1202, 2021 WL 4520645, at *3 n.6 (3d Cir. Oct. 4, 2021) (noting that courts can *sua sponte* dismiss claims "if the plaintiff has notice and an opportunity to respond to the . . . relevant arguments").

### 3.  Sandra & Christopher Willauer's Claim Against Vita

Vita has moved to dismiss Sandra and Christopher Willauer's intentional infliction of emotional distress claim against him.  *See* ECF No. 9-1 at 10.  Vita mainly argues that Sandra and Christopher Willauer have not alleged facts showing that his conduct was "extreme and outrageous."  *See id.*; ECF No. 14 at 4.  "[E]xtreme and outrageous" conduct is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Jordan*, 276 A.3d at 775 (quoting *Rinehimer v. Luzerne Cnty. Cmty. Coll.*, 539 A.2d 1298, 1305 (Pa. Super. Ct. 1988)).  However, "[i]f reasonable persons may differ" regarding whether conduct is extreme and outrageous the jury should "determine whether the conduct is sufficiently extreme and outrageous to incur liability."  *See D.C. v. Pittsburgh Pub. Schs.*, 415 F. Supp. 3d 636, 665 (W.D. Pa. 2019) (quoting *Jordan v. City of Phila.*, 66 F. Supp. 2d 638, 642 (E.D. Pa. 1999)).

---

[23] Amendment would be futile given that the Intermediate Unit is entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act.  *See, e.g.*, *Grayson*, 293 F.3d at 108 (noting the Court must allow amendment unless it "would be inequitable or futile"); *Chandler*, 2021 WL 753043, at *2.

Here, although Sandra and Christopher Willauer do not identify the specific conduct they are complaining about, the Complaint taken as a whole suggests the conduct at issue is Vita's decision to direct staff to give Willauer—a student with significant disabilities—an electric grinder to use unsupervised and without protective clothing.  *See* ECF No. 1 ¶¶ 216-20.  Based on these facts, the Court "cannot conclude at this stage that the alleged conduct was not extreme and outrageous as a matter of law."  *Cf. Rightmyer v. Philly Pregnancy Ctr., P.C.*, Civ. Action No. 23-1925, 2024 WL 897983, at *4 (E.D. Pa. Mar. 1, 2024).  Therefore, the Court will not dismiss Sandra and Christopher Willauer's intentional infliction of emotional distress claim on this prong.

However, where a plaintiff brings a claim for intentional infliction of emotional distress based on conduct that is directed at a third party, there are additional requirements that the plaintiff must establish, such as that the plaintiff was "'present at the time' when the extreme and outrageous conduct occurred."  *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652-53 (Pa. 2000) (quoting Restatement (Second) of Torts § 46(2)) (finding mother did not have a claim for intentional infliction of emotional distress based on medical malpractice that caused daughter's death because mother did not "contemporaneous[ly] observ[e]" the malpractice); *Johnson v. Caparelli*, 625 A.2d 668, 673 (Pa. Super. Ct. 1993) (dismissing parents' claim for intentional infliction of emotional distress based on priest's sexual abuse of their child because they were not present when the sexual abuse occurred).  Here, neither Sandra nor Christopher Willauer allege that they were present when Vita directed staff to give Willauer the grinder or

when Willauer was injured.  *See* ECF No. 1.  Therefore, the Court will dismiss their claim for intentional infliction of emotional distress against Vita without prejudice.[24]

### 4.    Willauer's Claim Against Vita

Again, Vita mainly argues that Willauer has not alleged facts showing that his conduct was "extreme and outrageous."  ECF No. 9-1 at 10; ECF No. 14 at 4.  For the reasons discussed above, the Court will not dismiss Willauer's intentional infliction of emotional distress claim on this prong at this stage.  However, intentional infliction of emotional distress claims require the plaintiff to show that "the conduct [was] intentional or reckless."  *See Jordan*, 276 A.2d at 775 (quotation omitted).  This element requires that the defendant "undertook the complained-of conduct 'with knowledge . . . that severe emotional distress [was] substantially certain' to result." *See Piazza v. Young*, 403 F. Supp. 3d 421, 442 (M.D. Pa. 2019) (quoting *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 927 (M.D. Pa. 2015)).  This is a higher bar to meet than the bar for deliberate indifference in the Section 1983 context.  *See Bryan v. Erie Cnty. Off. of Child. & Youth*, 861 F. Supp. 2d 553, 585 (W.D. Pa. 2012) ("The tort of intentional infliction of emotional distress requires a showing beyond the threshold required by deliberate indifference in the [Section] 1983 context").

Here, Willauer has not alleged facts suggesting that Vita directed staff to give Willauer the electric grinder to use unsupervised and without protective clothing with the knowledge that his actions were substantially certain to cause Willauer severe emotional distress.  *See* ECF No. 1 ¶ 217 (concluding Vita intentionally caused distress without providing facts showing intent); *see*

---

[24] The Court will dismiss this claim against Vita without prejudice because Plaintiffs could amend their Complaint to include facts showing that their claim should survive.  *See Grayson*, 293 F.3d at 108 (noting the Court must allow amendment unless it "would be inequitable or futile").

*also Bryan*, 861 F. Supp. 2d at 587 ("While the acts of the individual defendants could reasonably be viewed as deliberately indifferent, the record could not support a finding that they placed [a child] in [a foster] home with the intent that he assault [another child] and the expectation that [this other child] suffer severe emotional distress as a result").  Therefore, the Court will dismiss Willauer's intentional infliction of emotional distress claim against Vita without prejudice.[25]

### G.     Count VIII – Negligent Infliction of Emotional Distress

The School District has moved to dismiss Plaintiff's negligent infliction of emotional distress claims and argues that governmental immunity bars them.  ECF No. 10-1 at 19-21. However, Plaintiffs again claim that the real property exception to governmental immunity applies.  ECF No. 1 at ¶ 206; ECF No. 13 at 29-31; ECF No. 20 at 7-9.  As discussed above, here Plaintiffs do not allege facts suggesting that the School District had possession of the curtain, the work bench, or the real property they were attached to.  *See* ECF No. 1 at ¶¶ 110-11 (alleging that the "opaque curtain" and the "work bench/station" at issue were both "fixed to and/or attached to the real property of [the Intermediate Unit]").  Because Plaintiffs do not allege that the School District had possession, the Court will dismiss Plaintiffs' negligent infliction of emotional distress claim against the School District without prejudice.[26]  *See Johnson*, 975 F.3d at 404 (noting exception only applies where agency has "total control over the premises" (quoting *Sweeney*, 799 A.2d at 977)).

---

[25] The Court will dismiss this claim without prejudice because Willauer could amend his Complaint to include facts that show his claim should survive.  *See Grayson*, 293 F.3d at 108 (noting the Court must allow amendment unless it "would be inequitable or futile").

[26] Willauer could potentially amend his Complaint to include facts that show the real property exception might apply.  *See Grayson*, 293 F.3d at 108 (noting the Court must allow amendment unless it "would be inequitable or futile").

H.    **Count IX – Loss of Consortium**

The Intermediate Unit, Vita, and the School District have moved to dismiss Sandra and Christopher Willauer's loss of consortium claim, arguing that they cannot bring such a claim as a matter of law.  ECF No. 9-1 at 10-11; ECF No. 10-1 at 22-23.  Sandra and Christopher Willauer respond that their loss of consortium claim is valid because it is derivative to Willauer's Section 1983 claim—and not his state law claims.  ECF No. 12 at 31-32; ECF No. 13 at 31-32.

Pennsylvania law does not allow parents to sue for the loss of consortium of a child.  *See Beam*, 165 F. Supp. 3d at 217 (citations omitted).  Parents also cannot bring a loss of consortium claim derived from violations of their child's civil rights.  *Cf. Thomas v. Shutika*, Civ. No. 12-CV-692, 2012 WL 4050005, at *1 (M.D. Pa. Aug. 24, 2012) (observing while reviewing a spouse's loss of consortium claim that "although there is limited case law on this issue, the federal courts almost unanimously have dismissed loss of consortium claims based upon federal civil rights violations" (quoting *Brown v. Youth Servs. Int'l of Baltimore, Inc.*, 904 F. Supp. 469, 470 (D. Md. 1995)).

However, parents themselves have a liberty interest in "the companionship of their [minor] children" or their unemancipated adult children.  *See White v. City of Vineland*, Case No. 16-cv-08308, 2022 WL 16637823, at *1 (D.N.J. Nov. 2, 2022); *McCurdy v. Dodd*, 352 F.3d 820, 830 & n.8 (3d Cir. 2003) (holding that "the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his independent adult child" but that parents can rebut the "presumption of adulthood" for children over the age of majority with "clear and convincing evidence of lack of emancipation" because the Third Circuit could "conceive of situations where parents" who have a child with disabilities who is "'totally dependent upon her parents' . . . would have a relationship with their adult child which is

indistinguishable from a relationship with a minor child" (quotation omitted)); *Chambers ex rel.*
*Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 191-92 (3d Cir. 2009) (confirming
parents' liberty interests apply to "situations involving minor and unemancipated children").
Still, to maintain a Section 1983 claim based on a deprivation of this interest the parents must
show that the "official actions" at issue were "deliberately directed at the parent-child
relationship." *See McCurdy*, 352 F.3d at 829; *Chambers*, 587 F.3d at 192; *see also Doswell v.*
*City of Pittsburgh*, Civ. Action No. 07-0761, 2009 WL 1734199, at *15 (W.D. Pa. June 16, 2009)
(granting summary judgment because "apart from [the state actor's] admitted knowledge that . . .
[plaintiff] had a son, there is no evidence that his actions were in any manner directed toward"
the parent-child relationship).

Here, Sandra and Christopher Willauer only alleged a loss of consortium claim. *See* ECF
No. 1 ¶¶ 228-32. The Court will dismiss their loss of consortium claim with prejudice.[27] *See*
*Beam*, 165 F. Supp. 3d at 217; *Thomas*, 2012 WL 4050005, at *1. However, to the extent Sandra
and Christopher Willauer intended to bring a Section 1983 claim for deprivation of Willauer's
companionship,[28] the Court will dismiss their claim without prejudice[29] because they have not
alleged facts suggesting that the Intermediate Unit, Vita, or the School District's actions were

---

[27] The Court will dismiss this claim with prejudice because amendment would be futile. *See*
*Grayson*, 293 F.3d at 108 (noting the Court must allow amendment unless it "would be
inequitable or futile"); *Beam*, 165 F. Supp. 3d at 217 (dismissing parents' loss of consortium
claim with prejudice because Pennsylvania law "does not recognize a cause of action for the loss
of consortium of a child).

[28] Although Sandra and Christopher Willauer assert that they are bringing a loss of consortium
claim, they also cite cases addressing parents' Section 1983 claims and state that they were
denied their right to Willauer's companionship. *See* ECF No. 1 ¶¶ 229–30.

[29] The Court will dismiss this claim without prejudice because Plaintiffs could amend their
Complaint to include facts that show this claim should survive. *See Grayson*, 293 F.3d at 108
(noting the Court must allow amendment unless it "would be inequitable or futile").

"deliberately directed at the parent-child relationship." *See McCurdy*, 352 F.3d at 829; ECF No. 1.

## IV.    CONCLUSION

The Court will dismiss the following claims with prejudice: (1) Willauer's Section 1983 claims for enforcement of the ADA; (2) Plaintiffs' intentional infliction of emotional distress claims against the School District and the Intermediate Unit: and (3) Sandra and Christopher Willauer's loss of consortium claim.  The Court will also dismiss the following claims without prejudice: (1) Willauer's negligence claim against the School District: (2) Willauer's breach of fiduciary duty claim against the School District: (3) Plaintiffs' intentional infliction of emotional distress claims against Vita: (4) Plaintiffs' negligent infliction of emotional distress claim against the School District: and (5) Sandra and Christopher Willauer's Section 1983 claim for deprivation of Willauer's companionship.  The Court will otherwise deny Defendants' motions to dismiss.

An appropriate order follows.

BY THE COURT:

MARY KAY COSTELLO, J.

34